# EXHIBIT A

STATE OF MINNESOTA

COUNTY OF CROW WING

DISTRICT COURT

NINTH JUDICIAL DISTRICT

CASE TYPE: _____

---

TROY and LORIE GRATKE, on behalf of
themselves and all others similarly situated,

          Plaintiffs,

Civil Action No._____

**SUMMONS**

   v.

ANDERSEN WINDOWS, INC. and
ANDERSEN CORPORATION,

         Defendants.

---

STATE OF MINNESOTA to the above-named Defendants Andersen Windows, Inc. and Andersen Corporation.

      You are hereby summoned and required to serve upon Plaintiff's attorneys an answer to the Complaint which is herewith served upon you within 20 days after service of this Summons upon you, exclusive of the day of service. If you fail to do so judgment by default will be taken against you for the relief demanded in the Complaint.

      You are further notified that this case may be subject to Alternative Dispute Resolution pursuant to Minn. Stat. § 543.22 and Rule 114.01 of the General Rules of Practice for the District Courts.

Dated: March 4, 2010

LOCKRIDGE GRINDAL NAUEN P.L.L.P.

By:   _____
Robert K. Shelquist (MN # 21310X)
Matthew R. Salzwedel (MN # 0312903)
Matthew B. Johnson (MN #0387886)
Eric N. Linsk (MN # 0388827)
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401-2197
(612) 339-6900

Charles J. LaDuca
Cuneo Gilbert & LaDuca LLP
507 C Street N.E.
Washington, D.C. 20002
(202) 789-3960

Michael McShane
Audet & Partners, LLP
221 Main Street, Suite 1460
San Francisco, CA 94105
(415) 568-2555

Arnold Levin
Charles Schaffer
Levin Fishbein & Berman
510 Walnut Street, Suite 500
Philadelphia, PA 19106-3697
(215) 592-1500

*Attorneys for Plaintiffs*

STATE OF MINNESOTA

COUNTY OF CROW WING

DISTRICT COURT

NINTH JUDICIAL DISTRICT

CASE TYPE: CONTRACT

TROY and LORIE GRATKE, on behalf of
themselves and all others similarly situated,

     Plaintiffs,

v.

ANDERSEN WINDOWS, INC. and
ANDERSEN CORPORATION,

     Defendants.

Civil Action No._____

**CLASS ACTION COMPLAINT
JURY TRIAL DEMANDED**

Plaintiffs Troy and Lorie Gratke ("the Plaintiffs") on their own behalf and on behalf of all others similarly situated as defined herein, by their attorneys, for their class action complaint against Defendants Andersen Windows, Inc. and Andersen Corporation (hereinafter collectively "Andersen" or "Defendants"), allege as follows, upon knowledge as to themselves and upon information and belief and other facts as set forth herein.

## NATURE OF ACTION AND BACKGROUND

1.    This action alleges breach of contract, breach of express warranties; breach of implied warranties, violation of consumer protection statutes, violation of the Unlawful Trade Practices Act, unjust enrichment, reckless misrepresentation, and negligence, all in connection with, *inter alia,* Defendants' design, marketing, sale and distribution, and the manufacture of defectively designed and/or manufactured 400 Series Tilt Wash vinyl clad windows despite its knowledge of the problems and malfunctions of the window systems.

2.    The action is brought by Plaintiffs individually and on behalf of all persons or entities who currently own or who have owned  a 400 Series Tilt Wash vinyl clad window

410587.8

manufactured or sold by Defendants that was or is part of a structure physically located in the State of Minnesota with the distinct alleged design and/or manufacturing defect that allows moisture intrusion which promotes an elevated moisture content and mold growth, accelerated and premature rotting, decay, and deterioration, and overall failure in the window system under normal conditions (collectively "Class Windows").

3.      Andersen knew that these defects were present in the Class Windows, but it knowingly and/or recklessly misrepresented to Plaintiffs and the Class that these windows were free from defects, were fit for their ordinary purposes, and took no action to adequately warn Plaintiffs and the Class or appropriately remedy the defects. Instead, Defendants concealed and failed to warn that the Class Windows promoted an elevated moisture content and mold growth, accelerated or promoted premature rotting, decay, deterioration and overall failure, and that these problems were caused by the design and/or manufacturing defect(s).

4.      At all relevant times, Andersen marketed and sold the Class Windows as being free of defects. Andersen was aware that its Class Windows were defective, yet failed to take affirmative steps to advise its customers of the defective and substandard condition of its Class Windows. This action seeks, *inter alia*, injunctive relief and/or damages arising from Defendants' unlawful acts.

5.      As a result of the defective nature of these Class Windows, upon information and belief, thousands of customers in Minnesota have experienced and/or will experience damage to, among other places, their Class Windows and adjacent framing walls and siding, all of which will cause an ascertainable loss or costs due to the defective product flowing from the premature failure, rot and deterioration of the windows manufactured by Andersen. The damage caused by these defects is substantial, including thousands of dollars in materials and labor to remove the

Class Windows, to install new windows and to replace items, including but not limited to, fitted blinds, valances, shades, drapes, and curtains, and to repair all other damages to the home caused by the Class Windows and caused from replacing and repairing walls, studs, siding and trim associated with replacing the Class Windows.

6.      Had the Plaintiffs and members of the class known about these design and/or manufacturing defects at the time of purchase, they would not have purchased the Class Windows, or would have had an opportunity to negotiate a lower purchase price for the structure containing the Class Windows, or could have negotiated to have the Class Windows replaced prior to or in conjunction with purchasing the structure containing the Class Windows.

7.      As a result of the Defendants' acts and omissions as alleged herein, Plaintiffs and members of the Class have suffered ascertainable harm, including but not limited to, the costs to replace the Class Windows, labor costs to remove and install new windows, and costs to repair or replace the surrounding areas of the home affected by the Class Windows and/or replacing the Class Windows.

## JURISDICTION AND VENUE

8.      This Court has jurisdiction over the subject matter of this action as Plaintiffs reside in this District, Andersen is a resident of Minnesota, and Andersen does business in this District and throughout the State of Minnesota.

9.      Venue is proper in this District because Plaintiffs reside in this District, Defendants transact business in this District, and Defendants are subject to personal jurisdiction in this District, and therefore are deemed to reside in this District within this State. Many of the acts and transactions alleged herein, including the sales and installation of the Class Windows, the dissemination of materially false and misleading materials, and omissions, occurred in this District.

10.     This Court is appropriate for this litigation of the claims of all members of the Class because Defendants conduct business in this District, are headquartered in the State of Minnesota, and have a principal place of business in Minnesota.  Minnesota law governs this action and no other state's governmental policies or interests with the litigation outweigh those of this State.

## PARTIES

11.     Plaintiffs Troy and Lorie Gratke ("the Gratkes") are residents and citizens of the Township of Sylvan, State of Minnesota who own a structure that was constructed with Class Windows.

12.     On or about December 2004, approximately 11 Class Windows were delivered to the new construction site of the Gratke home.  The Class Windows were installed in the home and are currently still affixed to the home.

13.     In or about September 2008, the Gratkes noticed a mushroom bearing form of mold growth from the point of intersection of the outer frame jam member and the horizontal outer frame jam member sill and other failures of the Class Windows had caused damage to the Class Windows and main structure of their home.

14.     Upon discovering the damage, Plaintiffs contacted Andersen and requested repair or replacement at Andersen's expense.

15.     Plaintiffs' Class Windows at the point of intersection of the outer frame jam member and the horizontal outer frame jam member sill showed a gap between the vinyl clad which, unknown to the Plaintiffs, exposed the internal wood to an elevated moisture content and mold growth, accelerated or promoted premature rotting, decay, deterioration leading to failure.

16.     The Class Window defect allowing for water penetration and increased moisture absorption was present in the Class Windows when they left Andersen's factory, and were part of the Class Windows by design and manufacture.

17.     In May 2009, Andersen sent representatives to Plaintiffs' home for the stated purpose of repairing the Class Windows.

18.     Andersen's representatives stated to Plaintiffs that Plaintiffs' 11 Class Windows were manufactured at the same time but that some of the Class Windows were not treated properly during the manufacturing process.

19.     Andersen's representatives removed some (but not all) of Plaintiffs' 11 Class Windows from their frames, drilled holes, and injected a chemical solution that they claimed would fix the problem.

20.     Andersen knew the attempted "fix" would not ultimately work, as it was designed to delay the deterioration but not repair it.

21.     Andersen failed to clean the rot and mold growth inside the Plaintiffs' Class Windows and other parts of the home adjacent to or in contact with the Class Windows.

22.     The design characteristics and manufacturing methods used by Andersen to produce the Class Windows resulted in the ascertainable loss or damages caused to Plaintiffs and the class.  The only true fix for the Class Windows is their removal and replacement which will require adjustment and resizing from the current window size, will result in a smaller window glass, and will cause damage to the structure including, but not limited to, the walls, studs, siding, and trim.  Additionally, mold, rot or other damage caused to the adjacent or adjoining areas of the structure will have to be cleaned or remediated.

23.    As a result of these the design and/or manufacturing defects, the Gratkes and the Class will incur ascertainable damages including but not limited to, cost of materials to replace each and every window in their home, labor costs to replace the same, and labor costs and materials to repair any additional damages to the home.

24.    Defendant Andersen Windows, Inc.  is a Minnesota corporation with its headquarters and principal place of business in Bayport, Minnesota.  Andersen is the world's largest manufacturer of wood windows, patio doors, and storm doors, with estimated annual sales of $2.5 billion. Defendant Andersen does business in Minnesota and this county, and committed the acts alleged herein, thus causing damage within Minnesota.  This Court has personal jurisdiction over Defendant Andersen under Minn. Stat. § 543.

25.    Defendant Andersen Corporation is a Minnesota corporation with its headquarters and principal place of business in Bayport, Minnesota.  Andersen is the world's largest manufacturer of wood windows, patio doors, and storm doors, with estimated annual sales of $2.5 billion. Defendant Andersen does business in Minnesota and this county, and committed the acts alleged herein, thus causing damage within Minnesota.  This Court has personal jurisdiction over Defendant Andersen under Minn. Stat. § 543.

## FACTUAL ALLEGATIONS

26.    Upon information and belief Defendants are, and at all times relevant hereto were, engaged in the business of designing, developing, manufacturing, distributing, marketing, selling, and installing windows and doors in the State of Minnesota and throughout the United States.  Defendants have been in the business of manufacturing windows since approximately 1903.

27.    Defendants manufacture windows at its facilities in Minnesota, Wisconsin and elsewhere.

28. Upon information and belief, Andersen's manufacturing process at one time involved dip-treating its products in a wood preservative. Andersen stopped applying such preservative to some windows for a period of time.

29. Andersen was negligent in the design and manufacture of the Class Windows for a number of reasons, including but not limited to that the Class Windows do not seal which promotes elevated moisture content and mold growth, accelerates and promotes rotting, decay, deterioration and overall failure.

30. Andersen knew or should have known that the foregoing defects made the Class Windows susceptible to premature failure through various processes, under normal use conditions.

31. Andersen was negligent in the design and manufacture of the Class Windows for a number of reasons, including that the vinyl clad windows do not seal properly and the untreated wood is exposed to moisture infiltration.

32. Andersen failed to disclose to Plaintiffs and the Class members that the Class Windows had a substantial risk that those windows would fail because of the defects alleged herein, and that the defect might not exhibit itself until after the warranty period, and that if the latent defect did not exhibit itself until after the warranty period expired, Andersen was not committed to repair it.

33. Although Andersen was aware of the defective condition of the Class Windows manufactured without the preservative treatment, it made no effort to publicize the defective condition of its Class Windows or take affirmative steps to notify its customers that their Class Windows would fail, be subject to water penetration and the growth of mold and fungus, and rot prematurely. Upon information and belief, Andersen could identify all of the customers who had

purchased the Class Windows and many of the structures in which the Class Windows were installed.

34.     Failure to disclose the defective condition by Andersen has made it difficult if not impossible for the Class to discover the defective nature of the Class Windows. The defective nature of the Class Windows that promotes water penetration and the growth of mold and fungus and premature rot causes the damage to the window system to take place inside the vinyl clad window frame members. Only in the case of exterior fungus growth and the appearance of mushrooms from the gap between the frame members would Plaintiffs or the Class be able to identify the defective nature of the Class Windows.

35.     Failure to identify water penetration, elevated moisture, decay and mold growth within the vinyl clad wood frame of the Class Windows can expose other parts of the Class Window system and home to excessive damage.

36.     Customers who owned Class Windows that had not yet rotted, but which would rot and deteriorate prematurely, received no notice or warning of the latent defects in the Class Windows. Moreover, due to the concealment by Andersen, customers whose Class Windows experienced premature rot and deterioration received no notice that the rot was caused by a latent defect in the window and not other factors such as weather conditions or improper installation and maintenance. Andersen's affirmative acts and omissions prevented or delayed discovery of the Class Window defect delaying discovery and, thus tolling any and all statues of limitation.

37.     The following represents a sampling of internet postings by Andersen Windows purchasers demonstrating general frustrations with the Class windows:

> * We too trusted our builder and the Andersen name when we built our home in 1995 near St. Louis Mo. Several were replaced by Andersen after they blamed everyone from the builder to the bricklayer. We caught water in buckets in our

basement for three years from windows on the second story while we tried to figure out where the leaks were. It was in all cases the windows leaking at the bottom corners. They have always leaked air and we have learned to sleep with the noise of the rattling screens on those windy nights. For about the last four years I have watched the north sash on the living room window literally ROT away. You can see it from the road. I can just about put my hand through it. Tonight I was called to the kitchen to tilt the sash in for cleaning and a part of the sash FELL OFF because it has been rotting inside. My only option is to buy one sash at a time as they rot as cannot afford to replace all the windows in the house at once. If the seal were broken and moisture collects between the glass that is covered for 20 years and would come with the wood sash I need. Everything else is covered for only 10 years. Sign me up for the class action law suit. We replaced the windows in our rent house with Tempco from the local lumber yard (cheaper) During a severe storm, we had water running down the wall leaking under the bottom sash of a locked Andersen double hung window. Called the renters the next day and all was fine. Don't let anyone feed you that tired old line that you get what you pay for. Sometimes you just pay more for less. When we built this house, the thought never crossed my mind that we would have to buy it a piece at a time all over again. Anyone selling their old sashes, I really don't want to give "them" another dime.

* The only problem I've seen as a builder is that anderson either uses vinyl or a roll form aluminum that conducts moisture to the interior thereby promoting rot. Marvin uses in their windows a Pultrudes aluminum, think Quater vs. a dime in thickness, and none of it touches the wood. Marvin never fades in color because of it's kynar finish. The warranty is great 10 years on the hardware and 20 on the glass vs. seal failure and insulation. Marvin also makes a line called Integrity that is stock sizes and made of pulltruded fiberglass, called Ultrex. Go to MARVIN.COM and INTEGRITY.com

* Sadly many manufacturers cant get it right. I cant tell you how many Andersen windows we replace that are rotted from the inside out. Especially the 200 series that are wide open in the corners. Even on the 400's the vinyl cladding often cracks and lets water in. On the sashes, all that keeps the water out is a bead of silicone!!!! At least the metal clad window companies make a dado for the cladding to lock into.

* Thanks bosquel! Yes, these are double hung windows. We are not happy as it was represented to us by our builder that these were vinyl clad. I'm contacting the Andersen rep again as I was told Andersen would stand behind these windows despite being out of warranty but just to wait till spring. Good thing we did as more windows are looking bad. These are white outside and then stained oak on the inside. I find it weird that we are seeing wood rot as some have no visible problem on the outside (flaking or cracking paint/vinyl). I'm not sure where the moisture is getting in.

38.     Andersen knew, prior to sale to Plaintiffs and the Class that for the indefinite future there was a substantial risk that its Class Windows would prematurely fail.  Nevertheless, Andersen failed to disclose that risk and thereby deprived consumers of the opportunity to negotiate additional warranty coverage, negotiate a lower price to reflect the risk, or simply avoid the risk altogether by purchasing a different manufacturer's windows or requesting that a different manufacturer's windows be installed prior to or in conjunction with the purchase of the structure.  Thereafter, the undisclosed risk occurred – Plaintiffs' Class Windows (and thousands of others) have failed – and Plaintiffs and the Class have been damaged in the amount it will cost, or they paid, to repair the condition and replace the windows and adjoining portions of the structure damaged by the removal and replacement of the Class Windows.

39.     Consumers in the United States reasonably expect that their windows will not fail due to defective design and manufacturing processes, and consumers in the United States had no expectation that Andersen's Class Windows would fail prematurely.  Plaintiffs and Class members have a reasonable expectation that windows will not need to be replaced shortly after installation absent and act of God or application of abnormal or unusual physical force.

40.     Consumers reasonably expect that if Andersen knew it had an inherent defect problem with failures developing, a manufacturer such as Andersen would disclose to consumers if it determined that there was a widespread failure problem.

41.     Consumers reasonably expect that if Andersen knew it had an inherent defect problem with failure developing, a manufacturer such as Andersen would repair the latent defect even if the defect did not exhibit itself until after the warranty period expired, because the potential causes of the defect are within the control and responsibility of the manufacturer.

42. Prior to Plaintiffs' purchase, Andersen was aware that its Class Windows contained an inherent defect that permitted failure.

## CLASS ACTION ALLEGATIONS

43. Plaintiffs bring this action as a class action pursuant to Minnesota Rules of Civil Procedure 23 on behalf of themselves and all members of the proposed class defined as follows:

> All those persons or entities who currently own or have owned a 400 Series Tilt Wash vinyl clad window manufactured or sold by Defendant Andersen Corporation that was or is part of a structure physically located in the State of Minnesota with the distinct design and/or manufacturing defect that allows moisture intrusion which promotes an elevated moisture content and mold growth, accelerated and premature rotting, decay, and deterioration, and overall failure in the window system under normal conditions..

Excluded from the Class are Defendants, their parents, subsidiaries, affiliates, agents and representatives, including registered dealers and its officers and directors at all relevant times, members of its immediate families and its legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest. Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family.

44. The members of the proposed Class are so numerous that joinder of all members is impracticable. The exact number of Class members is unknown to Plaintiffs at this time but may be determined from the records maintained by Andersen and/or its dealers. On information and belief, the number of Class Windows is in the thousands.

45. Plaintiffs' claims are typical of the claims of the Class, as all Class members were and are similarly affected by Andersen's wrongful conduct in violations of the Minnesota statutory and common laws that are complained of herein. Plaintiffs and each of the Class members purchased, had installed, and/or have acquired homes with 400 Series Tilt Wash vinyl clad windows, which are subject to elevated moisture content and mold growth, accelerated and

premature rotting, decay, and deterioration, and overall failure. Plaintiffs and the Class members have sustained substantial damages, resulting from the design and/or manufacturing defects, including, but not limited to, cost of materials to replace each and every window in their home, labor costs to replace the same, and labor costs and materials to repair any additional damages to the home.

46.     Plaintiffs will fairly and adequately represent and protect the interests of the other Class members and have retained counsel competent and experienced in class action and consumer fraud litigation. Plaintiffs and their counsel are aware of no conflicts of interest between Plaintiffs and other members of the Class.

47.     Common questions of fact and law exist as to all Class members and predominate over any questions solely affecting individual Class members. Among the questions of law and fact common to the Class are:

(a)     whether the Class Windows were designed and/or manufactured with defective gaps between the frame members and are defective;

(b)     whether the Class Windows are predisposed to elevated moisture content and mold growth, accelerated and premature rotting, decay, deterioration and overall failure as a result of the designed and/or manufacturing defects;

(c)     whether Defendants knew or should have known of the defective nature of the Class Windows.

(d)     whether the Defendants knowingly failed to disclose, instruct, and warn of the design and/or manufacturing defect with the intent that others rely upon such concealment, suppression or omission;

(e)     whether Andersen intentionally or recklessly misrepresented the quality and material facts of its Class Windows in an effort to reach the Plaintiffs and the class and persuade them to purchase or install windows manufactured with the defective components;

(f)     whether Andersen knew or became aware that its Class Windows were defective and subject to premature deterioration and failure, yet continued to manufacture, distribute, advertise and market the Class Windows without correcting the problems and while directly or indirectly concealing the defects from the public and the class;

(g)     whether the Defendants used or employed misrepresentations, intentional omissions, or unconscionable commercial practices in connection with the sale of the Class Windows;

(h)     whether Plaintiffs and members of the Class are entitled to entry of final injunctive relief compelling Defendants to recall, inspect as necessary, effectively repair and/or replace the design and/or manufacturing defects and remedy the resultant problems from elevated moisture content and mold growth, accelerated and premature rotting, decay, deterioration and overall failure;

(i)     whether Plaintiffs and members of the Class are entitled to damages representing the ascertainable loss of money and/or property that have been and/or will be suffered by Plaintiffs and members of the Class as a result of the design and/or manufacturing defects;

(j)     whether Andersen should be declared financially responsible for notifying all class members of the defective nature of its Class Windows and to pay for the full costs and expenses of repair and replacement of all such Class Windows;

(k)     whether Andersen, through written advertising and through the express representations of its distributors to plaintiff class members, directly or indirectly created express or implied warranties;

(l)     whether the Defendants breached its implied warranties under Minn. Stat. § 336.2-314 ;

(m)    whether the Defendants breached its express warranties under Minn. Stat. § 336.2-313;

(n)     whether the Defendants engaged in unlawful, deceptive, and/or misleading conduct, as alleged;

(o)     whether the Defendants were unjustly enriched by its misrepresentations and breaches of warranty;

(p)     whether the applicable consumer protection laws and the common laws were violated by Andersen's conduct as alleged herein;

(q)     whether Defendants have a duty to disclose to its consumers material facts concerning the serious problems and damage that would inevitably result from its inherently defective Class Windows;

(r)     to what extent the Class has sustained damages; and

(s)     to what extent Defendants should be held to account for its wrongful conduct.

48.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members in impracticable.  Given the common design and/or manufacturing defects present in all Class windows, and the uniform

misrepresentations and omissions to the Class, Plaintiffs are not aware of any difficulties in managing the action as a class action

49.     The prosecution of separate actions can create a risk of inconsistent or varying adjudications with respect to individual members of the Class which could establish incompatible standards of conduct for Defendants.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.

50.     The records maintained by Andersen make it feasible for Andersen to perform the task of providing class notice.  Notice to the Class may be accomplished cheaply, efficiently and in a manner best designed to protect the due process rights of all Class members by means of written and/or published notices.

## FIRST CLAIM

## BREACH OF CONTRACT

51.     Plaintiffs on behalf of themselves and all others similarly situated, reallege the allegations contained in paragraphs 1 through 50 as if fully set forth herein.

52.     For good and valuable consideration given, Defendants entered express or implied contracts for the sale of goods with the Plaintiffs and the class and their successors in interest which contracts include a covenant of good faith and fair dealing.

53.     In manufacturing and selling defective windows, Defendants breached the terms of its contracts with the Plaintiffs and the class, including its covenant of good faith and fair dealing and were for a window that was expected to last as long as other window systems that could have been installed, but weren't.

54.   As a direct and proximate result of Andersen's breaches of its contracts with the Plaintiffs and the class, they have suffered, continue to suffer, and will suffer losses and damages to their properties or structures in an amount believed to be in excess of $50,000.00.

## SECOND CLAIM

## BREACH OF EXPRESS WARRANTY

55.   Plaintiffs on behalf of themselves and all others similarly situated, reallege the allegations contained in paragraphs 1 through 54 as if fully set forth herein.

56.   Upon information and belief, Defendants provided an express warranty at the time of sale.

57.   Defendants breached its express warranty in that its Class Windows, which were susceptible to water penetration and subsequent damage, contained a latent defect at the time of sale and otherwise failed to perform as expressly represented by Andersen.   Furthermore, Andersen has failed and refused to honor the terms of the express warranty causing the warranty to fail of its essential purpose, even though Andersen knows that its products were defective.

58.   Plaintiffs and the Class have suffered direct and consequential damages because the windows purchased by Plaintiffs and the class and their successors in interest were not merchantable or fit for their particular purpose and have resulted in actual damage including premature wood rot which has caused Plaintiffs and the Class to incur expense and lost time, which continues and will continue into the future in an amount believed to be in excess of $50,000.00.

## THIRD CLAIM

## BREACH OF IMPLIED WARRANTIES

59.   Plaintiffs on behalf of themselves and all others similarly situated, reallege the allegations contained in paragraphs 1 through 58 as if fully set forth herein.

60. Defendants have breached the implied warranty of merchantability in that its windows were defective and not fit for the ordinary purposes for which such windows are used; that is, to provide durable, long-lasting, suitable protection and use for the structures in which they were installed. Andersen was aware that its Class Windows were defective.

61. Andersen breached its implied warranty of fitness for a particular purpose in that its Class Windows were defective and not fit for the ordinary purpose for which such windows are used; that is, to provide durable, long-lasting, suitable protection and use for the owners of structures in which they are installed.

62. Andersen was aware of the particular purpose for which the Class Windows were intended and Plaintiffs and the Class members or their successors in interest relied upon Andersen's skill, judgment, and reputation.

63. Plaintiffs and the Class have suffered direct and consequential damages because the Class Windows purchased by Plaintiffs and the Class or their successors in interest were not merchantable or fit for their particular purpose and have resulted in actual damage including premature wood rot which has caused and will cause Plaintiffs and the Class to incur expense and lost time, which continues and will continue into the future in an amount believed to be in excess of $50,000.00.

## FOURTH CLAIM

## VIOLATION OF CONSUMER PROTECTION STATUTES

64. Plaintiffs on behalf of themselves and all others similarly situated, reallege the allegations contained in paragraphs 1 through 63 as if fully set forth herein.

65. Plaintiffs and all other Class members or their successors in interest are consumers who purchased Defendants' Class Windows for homes in which Defendants' Class Windows are installed. Minnesota has enacted statutes to protect consumers against unfair,

410587.8                                          17

deceptive or fraudulent business practices, unfair competition and false advertising. Minnesota allows consumers a private right of action to pursue claims under these statutes.

66.     By the misrepresentation and nondisclosure of material facts as alleged above, and misleading consumers as to the quality of ingredients, uses or benefits of the merchandise purchased, Defendants deceived Plaintiffs and Class members or their successors in interest. This conduct constitutes unlawful, unfair, deceptive, and fraudulent business practices within the meaning of Minnesota's consumer protection statutes.

67.     In addition, Andersen's promotion and sale of defective windows through false and deceptive representations constitute unfair competition and unfair, deceptive, untrue, or misleading advertising within the meaning of Minnesota's consumer protection statutes.

68.     The above described unlawful, unfair, deceptive and fraudulent business practices and false and misleading advertising and unfair competition by Andersen continues to present a threat to members of the public.

69.     As a direct and proximate result of Andersen's violation of Minn. Stat. §325D.43 and §§325F.67-325F.69, Plaintiffs and members of the Class have sustained, continue to sustain, and will sustain direct and/or consequential damages in an amount which is yet to be determined , but is believed to be in excess of $50,000.00.

## FIFTH CLAIM

## VIOLATION OF THE UNLAWFUL TRADE PRACTICES ACT

70.     Plaintiffs on behalf of themselves and all others similarly situated, reallege the allegations contained in paragraphs 1 through 69 as if fully set forth herein.

71.     Plaintiffs and Class members or their successors in interest are persons or entities who purchased Andersen's Class Windows for homes on which Defendants' Class Windows are installed for personal use.

72.     In violation of Minn. Stat. § 325D.13, Andersen, through advertising, use of print media, agents and warranties represented that its windows were of high quality and suitable for the purpose sold and purchased, when in fact they were not.

73.     At all relevant times Andersen knew or should have known that its Class Windows were defective and unfit for the purpose for which they were advertised and sold.

74.     As a direct and proximate result of Andersen's violation of Minn. Stat. § 325D.13, Plaintiffs and members of the Class have sustained, continue to sustain and will sustain direct and/or consequential damages in an amount which is as yet undetermined but is believed to be in excess of $50,000.00.

**SIXTH CLAIM**

**INTENTIONAL OR NEGLIGENT MISREPRESENTATION**

75.     Plaintiffs, on behalf of themselves and all others similarly situated, reallege the allegations contained in paragraphs 1 through 74 as if fully set forth herein.

76.     Defendants intentionally or negligently made material false representations that its Class Windows were designed or treated so as to prevent water penetration, premature rot and decay an that the windows were a quality product that would meet consumer expectations for a useful life.

77.     Andersen's Class Windows were not so treated and, therefore, Defendants' representations to the contrary were false.

78.     The representations of Defendants that the windows were treated so as to prevent water penetration, premature rot and decay were made either: (1) with knowledge that the components were not so treated or (2) recklessly without knowing of whether the design or the components not being treated would lead to premature failure. Defendants, having made

representations about the quality of its Class Windows had a duty to speak to ensure that the information it conveyed was not misleading.

79.    Defendants represented that the windows were designed and treated so as to prevent water penetration, premature rot, and decay with the intent to induce Plaintiffs and members of the Class or their successors in interest to purchase Andersen's Class Windows.

80.    Plaintiffs and members of the Class or their successors in interest purchased Andersen's Class Windows in reliance on the representations by Defendants that the Class Windows were designed or treated so as to prevent water penetration, premature rot, and decay, and suffered, and continue to suffer, substantial losses and damages to their property as a result of the Defendants' misrepresentations in an amount believed to be in excess of $50,000.00.

## SEVENTH CLAIM

## UNJUST ENRICHMENT

81.    Plaintiffs , on behalf of themselves and all others similarly situated, reallege the allegations contained in paragraphs 1 through 80 as if fully set forth herein.

82.    As a consequence of the conduct described above, Andersen extracted significant payments from Plaintiffs and members of the Class or their successors in interest who would not have purchased Class windows.

83.    As a result, Andersen has been unjustly enriched, having retained the benefits of its sales of defective Class windows in an amount believed to be in excess of $50,000.00.

## EIGHTH CLAIM

## NEGLIGENCE

84.    Plaintiffs, on behalf of themselves and all others similarly situated, reallege the allegations contained in paragraphs 1 through 83 as if fully set forth herein.

85.     Defendants owed Plaintiffs and the Class or their successors in interest a duty to exercise ordinary care in designing, manufacturing, warning, marketing and selling the Class Windows.  Defendants failed to exercise ordinary care in designing, manufacturing, warning, marketing and selling the Class Windows in a manner which a reasonably prudent window manufacturer would have or would have not done in the same or similar circumstances, and was negligent in one or more of the following particulars, among others:

(a)     In designing the Class Windows so that were subject to elevated moisture content and mold growth, accelerated and premature rotting, decay, and deterioration, and overall failure;

(b)     in designing the Class Windows so that they were resistant to elevated moisture content by sealing connecting vinyl clad members thereby preventing the exposure of the internal wood frame from the elements;

(c)     Failing to warn (a duty which is continuing) or instruct Plaintiffs and the Class of the aforesaid defects and resulting failure of the Class window system;

(d)     Failing to take precautions that a reasonable person would have in presenting the Class windows to the end users; and

(e)     Failing to adequately test its Class Windows to determine if they were susceptible to elevated moisture content and mold growth, accelerated and premature rotting, decay and deterioration, and overall failure.

86.     Plaintiffs and the Class were damaged as a result of the negligent acts or omissions of Defendants as set forth herein in an amount believed to be in excess of $50,000.00.

## PRAYER FOR RELIEF

As a result of the foregoing, Plaintiffs and the Class request an injunction requiring Defendants to replace the defective Class Windows and pay all expenses, including supplies,

labor, and a redecorating allowance. In the alternative, and for all members of the Class who previously replaced such defective windows, Plaintiffs request damages on behalf of themselves and all others similarly situated in an amount believed to be in excess of $50,000.00.

WHEREFORE, Plaintiffs on behalf of themselves and all others similarly situated, respectfully request the Court enter judgment against Defendants and in favor of Plaintiffs and the Class, and award the following relief:

a.) Determine that this action is a proper class action, designating Plaintiffs as Lead Plaintiffs and Plaintiffs' counsel as Lead Counsel, and certifying Plaintiffs as Class representatives under Rule 23 of the Minnesota Rules of Civil Procedure;

b.) Declare Defendants financially responsible for identifying all class members and notifying them of the defective nature of its Class Windows;

c.) Award compensatory damages in favor of Plaintiffs and the other Class members against Defendants for all damages sustained as a result of Defendants' wrongdoing in an amount to be determined at trial, including interest thereon;

d.) Order Defendants to replace the defective windows and pay all expenses, including supplies, labor, and a redecorating allowance or, in the alternative, pay damages to Plaintiffs and Class members in an amount sufficient to reimburse the current full replacement cost of all defective windows, including paying for costs of labor and redecoration;

e.) Require Defendants to account for and/or pay in damages to Plaintiffs and the Class the amounts by which Andersen was unjustly enriched due to its wrongful conduct;

f.) Award the Class costs and attorneys' fees against Defendants as allowed by law, and/or awarding Class counsel attorneys' fee from the common fund created hereby; and

g.) Grant such other or further relief as may be appropriate under the circumstances.

## JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury.


Dated:  March 4, 2010                    LOCKRIDGE GRINDAL NAUEN P.L.L.P.


                                         By: _____
                                              Robert K. Shelquist (MN # 21310X)
                                              Matthew R. Salzwedel (MN # 0312903)
                                              Matthew B. Johnson (MN #0387886)
                                              Eric N. Linsk (MN # 0388827)
                                         100 Washington Avenue South, Suite 2200
                                         Minneapolis, MN 55401-2197
                                         (612) 339-6900

                                         Charles J. LaDuca
                                         Cuneo Gilbert & LaDuca LLP
                                         507 C Street N.E.
                                         Washington, D.C. 20002
                                         (202) 789-3960

                                         Michael McShane
                                         Audet & Partners, LLP
                                         221 Main Street, Suite 1460
                                         San Francisco, CA 94105
                                         (415) 568-2555

                                         Arnold Levin
                                         Charles Schaffer
                                         Levin Fishbein & Berman
                                         510 Walnut Street, Suite 500
                                         Philadelphia, PA 19106-3697
                                         (215) 592-1500

                                         *Attorneys for Plaintiffs*

## ACKNOWLEDGMENT

The undersigned hereby acknowledges that pursuant to Minn. Stat. §549.211, sanctions

may be imposed if the Court finds violation of this section.

Dated:  March 4, 2010

Robert K. Shelquist (MN # 21310X)