UNITED STATES DISTRICT COURT

DISTRICT OF MINNESOTA

---

LORIE GRATKE & TROY GRATKE
ON BEHALF OF THEMSELVES &
ALL OTHERS SIMILARLY SITUATED,

Plaintiffs,

v.

ANDERSEN WINDOWS, INC. &
ANDERSEN CORPORATION,

Defendants.

Civil No. 10-CV-963 (PJS/LIB)

REPORT AND RECOMMENDATION

---

This matter came before the undersigned United States Magistrate Judge upon the Motion of the Plaintiffs, Lorie and Troy Gratke, to Dismiss Defendants' Counterclaim, or Alternatively, to Strike the Counterclaim. A hearing on the Motion was conducted on November 23, 2010. The case has been referred to the Magistrate Judge for report and recommendation under 28 U.S.C. § 636(b)(1). For reasons outlined below, the Court recommends that the Plaintiff's Motion to Dismiss be Granted.

I.      BACKGROUND

In December 2004, Plaintiffs installed Defendant's 400 Series Tilt Wash vinyl clad windows on their home. (Compl. [Dkt. 1] at ¶¶ 1, 12.) About four years later, in September 2008, Plaintiffs noticed a "mushroom bearing form of mold growth" on the intersection of the outer frame jam member and the horizontal outer frame jam member. (Id., ¶ 13.) After finding the damage, Plaintiffs contacted Defendant and requested repairs to their windows. (Id., ¶ 14.) In May 2009, Defendant's representatives attempted to fix the windows by injecting a chemical

1

solution into the windows. (Id., ¶ 19.) However, Plaintiffs allege that the Defendant's representatives failed to clean the rot and mold growth from the windows and from other parts of the home in contact with the windows. (Id., ¶ 22.) Additionally, Plaintiffs assert that the only true fix for the windows is their removal and replacement which will require adjustment and resizing and will cause damage to Plaintiffs' home. Id.

After Defendant attempted to fix the windows, Plaintiffs filed the instant action. Plaintiffs assert claims for breach of contract, breach of implied warranties, unjust enrichment, and negligence, arising out of Defendant's "design, marketing, sale and distribution, and the manufacture of defectively designed and/or manufactured 400 Series Tilt Wash vinyl clad windows." (Compl., ¶ 1.)[1] Plaintiffs also purport to bring this action as a class action, with the class including "all persons or entities who currently own or have owned" the windows in question, where the windows were a part of a structure located in Minnesota. (Id. at ¶ 2.)[2] Plaintiffs allege that the windows are defective because they permit "moisture intrusion which promotes an elevated moisture content and mold growth, accelerated and premature rotting, decay, and deterioration, and overall failure in the window system under normal conditions." (Id.)

On July 13, 2010, Defendant filed an answer, in which it denied the allegations, and also asserted a counterclaim for a declaratory judgment that a limited warranty applies to the windows in question, and therefore, that Plaintiffs are limited to the remedies available to them under the terms of the limited warranty. (Ans. and Counterclaim, [Dkt. 27]). In addition,

---

[1] Plaintiff also asserted claims for breach of express warranty, violations of Minnesota' Consumer Protection statutes, violations of the Unlawful Trade Practices Act, and intentional/negligent misrepresentation, but those claims were dismissed, without prejudice by Judge James M. Rosenbaum on June 29, 2010, for a lack of particularity. (Ord. [Dkt. 24]).
[2] No class, however, has yet been certified by the District Court. Accordingly, the only claim now before the Court is that of the Gratkes' personally.

2

Defendant asserted a number of affirmative defenses alleging that the Limited Warranty bars Plaintiffs' claims and limits Plaintiffs' remedies. (Id.) On July 30, 2010, Plaintiffs moved to dismiss the counterclaim for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), or alternatively, to strike the counterclaim as redundant pursuant to Federal Rule of Civil Procedure 12(f).

## II.  STANDARD OF REVIEW

"When reviewing a Rule 12(b)(6) dismissal for failure to state a claim, we look only to the facts alleged in the complaint and construe those facts in the light most favorable to the [nonmoving party]." Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998), cert. denied, 525 U.S. 1178 (1999). "[D]ismissal under Rule 12(b)(6) serves to eliminate actions which are fatally flawed in their legal premises and designed to fail, thereby sparing litigants the burden of unnecessary pretrial and trial activity." Young v. City of St. Charles, 244 F.3d 623, 627 (8th Cir. 2001). The rule grants the court permission to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources. See Nietzke v. Williams, 490 U.S. 319, 326-27 (1989).

The Declaratory Judgment Act grants courts the authority to declare the rights and legal relations of interested parties, but does not impose a duty to do so. Wilton v. Seven Falls Co., 515 U.S. 277, 288 (1995). The Act limits the court's jurisdiction to "declar[ing] the legal rights and other legal relations of any interested parties." 28 U.S.C. § 2201. Thus, the Declaratory Judgment Act limits relief to where a "case or actual controversy" of a judicial nature exists. Penn Mutual Life Ins. Co. v. Barbara Glasser 2007 Ins. Trust, 2010 WL 3023420 at *3 (D. Del. Jul. 30, 2010) (citing Ashwander v. Tenn. Valley Auth., 297 U.S. 288, 325 (1936)). This standard requires a "real and substantial controversy admitting of specific relief through a decree

of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." Id. Moreover, the controversy cannot be "nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." Pub. Serv. Comm'n of Utah v. Wycoff Co., Inc., 344 U.S. 237, 244 (1952).

Numerous courts have used their discretion under the Declaratory Judgment Act to dismiss or strike redundant counterclaims. E.g., Mille Lacs Band of Chippewa Indians v. State of Minnesota, 152 F.R.D. 580, 582 (D. Minn. 1993) ("A redundant declaratory judgment is not a proper declaratory judgment and should be dismissed.") Generally, courts dismiss counterclaims where "they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses." Boone v. MountainMade Found., 684 F.Supp.2d 1 at *12 (D. D.C. 2010); Ortho-Tain v. Rocky Mountain Orthodontics, Inc., 2006 WL 3782916 at *3 (N.D. Ill. Dec. 20, 2006). This principle applies to counterclaims that merely "repackage" affirmative defenses. Rayman v. Peoples Sav. Corp., 735 F.Supp. 842, 852-53 (N.D. Ill. 1990); Tenneco Inc. v. Saxony Bar & Tube, Inc., 776 F.2d 1375, 1379 (7th Cir. 1985) (finding that the "label 'counterclaim' has no magic" and that what "is really an answer or defense to a suit does not become an independent piece of litigation because of its label.")

When deciding whether to dismiss a counterclaim as redundant, courts consider whether the declaratory judgment serves a useful purpose. Pettrey v. Enterprise Title Agency, Inc., 2006 WL 3342633 at *3 (N.D. Ohio Nov. 17, 2006); Ortho-Tain, Inc., 2006 WL 3782916 at *3. This analysis requires consideration of whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the

counterclaim. Daily v. Federal Ins. Co., 2005 WL 14734 at *6 (N.D. Cal. Jan. 3, 2005). Courts following the rule of dismissal note that "[a]lthough federal courts normally should adjudicate all claims within their discretion, in the declaratory judgment context this principle yields to consideration of practicality and wise judicial administration." Id.

## III. DISCUSSION

Before deciding whether to dismiss the counterclaim, the Court must first determine whether the counterclaim is in fact redundant. In this case, the Court finds that the Defendant's asserted defenses and the counterclaim seek the same relief and deal with the same legal and factual issues. Defendant's counterclaim essentially repackages its affirmative defenses.[3] Defendant's counterclaim seeks a declaration that the "Limited Warranty applies to the Windows and is valid and enforceable, and that the Gratkes are limited to the remedies available to them under the terms of the Limited Warranty." (Ans., ¶ 113.) Likewise, Defendant's separate affirmative defenses relating to the Limited Warranty include: (1) whether Plaintiffs breached the Limited Warranty; (2) whether Plaintiffs complied with the Limited Warranty; (3) whether by failing to follow the Limited Warranty the Plaintiffs failed to complete a condition precedent to

---

[3] In addition, Plaintiffs allege that Defendant's counterclaim is a mirror image of their own complaint. (Pl.'s Mem. in Supp. of Mot. to Dismiss [Dkt. 45], p. 10.) According to Plaintiffs, their complaint seeks relief for the Defendant's breach of express and implied warranties, and Defendant's counterclaim is essentially the opposite, that the limited warranty provides no express or implied warranties. (Id.) However, the Court finds that the case at hand is different from the other cases dismissing a counterclaim because it is a mirror image of the complaint. Other cases involve both claims and counterclaims determining the meaning of the same document or the defendant simply asserts the exact inverse of plaintiff's claim. Mille Lacs Band of Chippewa Indians, 152 F.R.D. at 582 (finding counterclaim redundant when Plaintiff sought declaratory judgment that they retain rights under an 1837 treaty while counterclaim seeks declaratory judgment that the treaty is no longer in force effect and raises identical factual and legal issues); Penn Mutual Life Ins. Co., 2010 WL 3023420 at *2 (determining counterclaim was mirror image when plaintiffs sought a declaration that the insurance policy was void while defendants counterclaimed for a declaration that there was no basis for rescission of the policy). Here, in contrast, the Defendant seeks to determine the meaning of a whole new document that is not contemplated on the face of the complaint. For these reasons, the Court declines to find the counterclaim to be a mirror image of the complaint.

any contract; (4) whether Plaintiffs' remedies are limited to the Limited Warranty; (5) whether Plaintiffs received the benefit of their bargain because the Limited Warranty provides adequate remedies at law; (6) whether causation can be shown since Plaintiffs failed to comply with the Limited Warranty; and (7) whether Defendant owes duties to Plaintiffs beyond those in the Limited Warranty. (Id., ¶¶ 121, 122, 126, 127, 132, 133, 135, 137). The determination of these defenses requires identical considerations as the declaratory judgment counterclaim. When considering Defendant's affirmative defenses, the Court will necessarily have to determine whether the Limited Warranty is valid, whether it applies and whether it limits the Plaintiff's remedy – precisely the same determination sought under the Declaratory Judgment. Daily, 2005 WL 14734 at *6 (requiring contemplation of whether resolution of original claim along with the affirmative defenses would resolve questions raised by the counterclaim). Therefore, the counterclaim serves no "useful purpose" since it seeks identical relief as Defendant's defenses. See Pettrey, 2006 WL 3342633 at *3.

However, even if a counterclaim is redundant, the Court may still exercise its discretion by not dismissing it. On whether dismissal is appropriate in the present case, the Court finds the reasoning in Strickrath, 2008 WL 2050990, persuasive.[4] In Strickrath, the court granted the plaintiff's motion to strike because it was redundant. Strickrath brought a claim on behalf of himself and others similarly situated alleging that Defendant knew its satellite telephone service was extremely poor, but failed to disclose the material defects in its service to Plaintiff. Strickrath, 2008 WL 2050990 at *1. Plaintiff brought claims alleging violations of California's unfair competition law, California's Business and Professional Code and California's Consumers

---

[4] The Court notes that the court in Stickrath dismissed the redundant counterclaim under Fed. R. Civ. P. 12(f) rather than on a motion to dismiss as presented here. However, the Court finds that the reasoning on a motion to strike and a motion to dismiss a redundant counterclaim to be similar. Compare Lincoln Nat'l Corp. v. Steadfast Ins. Co., 2006 WL 1660591 (N.D. Ind. Jun. 9, 2006) with Penn. Mut. Life Ins. v. GreatBanc Trust Co., 2010 WL 2928054 (N.D. Ill. Jul. 21, 2010). Thus, the Court considers this case instructive.

Legal Remedy essentially claiming that Defendant's failure to disclose information was unfair, unlawful and fraudulent. Id. In response, the Defendant brought a counterclaim alleging that the Service Agreement signed by the Plaintiff controlled the relationship between the parties. Id. at *1-2. Defendant additionally sought costs and attorney's fees. Id. at *2. The court dismissed the counterclaim as redundant.

Strickrath shares many similarities with the present case. First, both cases involve purported class actions. Second, like in Stickrath, Andersen Window's counterclaim requests a declaratory judgment interpreting a document upon which the Gratkes do not stake their relief. In the present case case, the Plaintiffs do not allege any violations of the limited warranty "much less rely on it, and . . . dispute that the limited warranty applies." (Def.'s Mem., p. 21 (citing Pl's Mem. in Opp. to Mot. to Dismiss [Dkt. 19], p. 10.)) Similarly, in Stickrath, the Plaintiff "never argued that the Service Agreements are not 'binding' or 'valid'-only that the Service Agreements . . . do not absolve [defendant] of its liability." Stickrath, 2008 WL 2050990 at *6. Third, Andersen Windows makes many of the same arguments as the Defendant in Stickrath. Thus, the Court finds the reasoning in Stickrath useful to its own analysis.

Similar to the Andersen Window's argument here, the Defendant in Strickrath argued that it had something to gain from its counterclaim beyond simple rejection of Plaintiff's suit, specifically that a ruling on the meaning of the Service Agreement could bar future claims by the Plaintiff or other parties beyond the claims alleged in the case. Id. at *6. However, the court denied the Defendant's argument because a declaratory judgment can only lie when there is an "actual controversy" between the parties. Id. Putative merely, possible, future claim of some sort by some as yet unidentified party do not an "actual controversy" make.

7

The Defendant here also contends that the relief its counterclaim seeks is broader than its defenses.[5] (Def.'s Mem. in Opp. to Mot. to Dismiss [Dkt. 53], p. 19-20, 23, 25). Defendant contends that it seeks a declaration of the rights and responsibilities of the parties under the Limited Warranty "so that Plaintiffs will know what they will have to do before commencing subsequent litigation and so they will know what relief can be sought in any such litigation." (Id., p. 23.) The Defendant, at oral argument and in its memorandum, provided an example of the future litigation Plaintiffs could bring if the counterclaim were dismissed. Specifically, Defendant asserts that a central feature in this case is whether the Plaintiffs provided proper notice to the Defendant about problems with their windows after Defendant attempted to fix them which Defendant alleges is required under the limited warranty. (Def.'s Mem., p. 25.) Thus, if the District Court were to find that Plaintiffs' claims should be dismissed because they did not comply with the notice requirements, but refused to make any other determinations regarding the limited warranty, the Plaintiffs could make a new request for service, comply with the notice requirements found to be required by the court, and turn around and reassert new claims against the Defendant. (Id.) Therefore, Defendant asserts that Plaintiffs could bring another, new lawsuit against it in the event the present one is dismissed if they take the steps under the limited warranty necessary for notice on a subsequent service request. The prospect of some as yet undefined future law suit against Defendant is always present, but it is not possible

---

[5] Defendant further contends that their counterclaim will streamline the action and reduce unnecessary litigation. (Def.'s Mem., p. 17-20). However, the Pretrial Order in this case, which was issued after Defendant filed its responsive memorandum, already effectively lays out a discovery plan that incorporates the streamlined timeline requested by Defendant and which it asserted at the initial Rule 16 conference with the Court would be most efficient. More specifically, the Pretrial Order limits stage one discovery to issues relating to the Limited Warranty and the Gratkes' claim in particular. (Pretrial Order [Dkt. 54]). Further, the order sets a date for substantive motions relating to the Gratkes' particular claim before additional discovery can be undertaken. (Id.) This deadline applies to motions regarding the Limited Warranty's effect and an early focus on the Gratkes' standing to act as possible class representatives. (Id.)

8

to predict the nature or specifics of any such future putative claim much less whether the Plaintiffs would themselves seek to assert some new claim at some future date. The Court must focus on the actual claim <u>now</u> before it and not speculate as to what may or may not lie somewhere out in the future.

Essentially, the Defendant asks the Court to make a broad decision on the scope of the meaning of all of the provisions of the Limited Warranty in order to prevent a future, hypothetical lawsuit by the Plaintiffs (or it seems any other putative party whose windows might be the same as involved in the present case). However, Defendant "is not entitled to an abstract declaration" about the limited warranty "that will ward off all future litigation." Stickrath, 2008 WL 2050990 at *6. The Declaratory Judgment Act limits relief to actual cases or controversies "between parties having adverse legal interests of sufficient immediacy and reality." MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007). Here, Defendant requests that the Court speculate to prevent future lawsuit without "articulat[ing] any looming threat of litigation or specific uncertainty . . . that the court could resolve." Stickrath, 2008 WL 2050990 at *7.

Allowing the Defendant's counterclaim for a broad declaratory judgment to proceed here essentially would require the Court to improperly issue a decision without an actual case or controversy before it at present. At issue in this case is whether the limited warranty precludes liability for Plaintiffs' present claims. Plaintiffs allege that the limited warranty does not bar Plaintiffs' claims while Defendants' assert that it does act as such a bar and limits Plaintiffs' remedies. (Pl.'s Reply Mem. [Dkt. 55], p. 8; Def.'s Mem., p. 19.) Thus, a dispute exists over whether the limited warranty serves as a bar to Plaintiffs' claim or limits their remedies in this specific instance. Plaintiffs do not dispute that the limited warranty is valid, only that it does not

apply here. See e.g., Stickrath, 2008 WL 2050990 at *6 (striking counterclaim partly because "there is no actual disagreement" about the validity of the Service Agreement representing the basis of the Defendant's counterclaim, rather the Plaintiff disputes whether the Agreement operates to absolve the Defendant of liability). As such, any other broad decision regarding whether the "Limited Warranty applies to the Windows and is valid and enforceable" and that lists the remedies available to the Gratkes (or any other potential future litigants) in some future case under the limited warranty is improper such that it calls for a declaration of the meaning of the limited warranty beyond the specific relief sought by Plaintiffs in the present case. (Ans. and Counterclaim, ¶ 116). Therefore, the meaning of the limited warranty as it applies to the facts of the present case, rather than a "hypothetical set of facts" in a potential future case, will necessarily be decided here without need for a declaratory judgment. See gen., Penn Mutual Life Ins. Co., 2010 WL 3023420 at *3. Any decision speculating about future litigation beyond the facts of the present case asks the Court to issue a decision regarding disputes that are "nebulous" and have not yet "take[n] on fixed and finale shape." See gen., Pub . Serv. Comm'n of Utah, 344 U.S. at 244. The Court "cannot issue a general declaration somehow interpreting all the terms" of the limited warranty that could resolve all possible future claims when the possible facts of those cases are merely hypothetical at this time. See gen., Stickrath, 2008 WL 2050990 at *6.

Finally, Defendants' counterclaim differs from cases where the court has refused to dismiss an allegedly redundant counterclaim. For example, in Iron Mountain Sec. Storage Corp. v. Am. Specialty Foods, Inc., 457 F.Supp. 1158 (D.C. Pa. 1978), the court refused to dismiss a counter claim that raised legal issues which the court may not have reached in resolving the complaint and affirmative defenses. The Plaintiff sought a declaration about the parties' rights

and obligations under an option agreement. Iron Mountain Sec. Storage Corp., 457 F.Supp. 1158, 1161-62 (D.C. Pa. 1978). In response, the Defendant counterclaimed alleging breach of the option agreement and seeking damages. Id. Because the counterclaim asked for damages "beyond the scope of the complaint" the court refused to dismiss the counterclaim. Id.; see also LeMaster v. USAA Life Ins. Co., 1995 WL 708656 at *3 (M.D. Fla. Nov. 27, 1995). In addition, the Court noted that if it found for Plaintiff, "although it might logically follow from that judgment that defendant's interpretation of the contract was the correct one, defendants would not be entitled to a judgment to that effect unless they specifically requested one." Id. at 1162.

Unlike the dispute in Iron Mountain, the present disagreement is not a dispute over the validity or the meaning of a contract, where the parties disagree about what the contract means, but rather a dispute over whether the limited warranty (which the parties treat as presumptively valid in the instant case) even applies at all. Thus, a decision on all of the terms of the warranty is merely advisory since the Plaintiffs do not seek relief regarding the terms of the limited warranty. Moreover the Defendant here does not ask for any additional costs or damages in association with its counterclaim beyond the relief sought by bringing its affirmative defenses. Therefore, the counterclaim does "not entitle the defendant in the original action to some amount of affirmative relief" as required to be a valid counterclaim. Riverside Mem'l Mausoleum, Inc. v. UMET Trust, 581 F.2d 62, 68 (3rd Cir. 1978) (finding that "[a]lthough the facts underlying some defenses might also support a counterclaim, not all counterclaims are valid defenses. The two concepts are distinct and must be kept so.")

Based on the above reasoning, the Court finds dismissal of the defendant's counterclaim proper, and will recommend dismissal accordingly.

## IV. CONCLUSION

Based on the foregoing, and all the files, records and proceedings herein,

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion to Dismiss [Docket No. 29] be **GRANTED**.

Dated: December 8, 2010

Leo I. Brisbois
U.S. MAGISTRATE JUDGE

### NOTICE

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and serving all parties **by December 22, 2010**, a writing that specifically identifies the portions of the Report to which objections are made and the bases for each objection. A party may respond to the objections within fourteen days of service thereof. Written submissions by any party shall comply with the applicable word limitations provided for in the Local Rules. Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals. This Report and Recommendation does not constitute an order or judgment from the District Court, and it is therefore not directly appealable to the Court of Appeals.